Frederic T. MERTENS, Sr., individually and as Administrator of the Estate of Frederic Thorn Mertens, deceased, and Margaret S. Mertens, Plaintiffs-Appellants-Appellees,

v.

The FLYING TIGER LINE, INC., Defendant-Appellee-Appellant.

No. 141, Docket 28690.

United States Court of Appeals Second Circuit.

Argued Oct. 27, 1964.

Decided Feb. 16, 1965.

---

39. See the legislative history set out in note 31, supra.

Clarence Fried, New York City (Hawkins, Delafield & Wood, New York City, on the brief) (Ronald Charles Wolf, New York City, of counsel), for plaintiffs-appellants-appellees.

Austin P. Magner, New York City (Condon & Forsyth, New York City, on the brief) (George N. Tompkins, Jr., New York City, of counsel), for defendant-appellee-appellant.

Before LUMBARD, Chief Judge, and HAYS and MARSHALL, Circuit Judges.

MARSHALL, Circuit Judge.

An action was commenced in the Southern District of New York to recover damages resulting from a death caused by an airplane accident in Japan. Decedent's parents brought the action in their individual capacity, and the father also acted in a representative capacity as the administrator appointed under New Jersey Law. The owner and operator of the airplane, a Delaware corporation doing business in New York, Flying Tiger Line, Inc., was served in New York and made defendant. Jurisdiction was based on diversity of citizenship, 28 U.S. C. § 1332.

At the outset we are faced with a question whether the Warsaw Convention, 49 Stat. 3000, is applicable. There is no doubt that the airflight in question was "international." The plane departed from Travis Air Force Base, San Francisco, California and the point of destination was Tachikawa Air Force Base, Tokyo, Japan, and both Japan and the United States are parties to the Convention. Instead, doubts as to the applicability of the Convention arise from the fact that when President Franklin D. Roosevelt, with the advice and consent of the Senate, adhered to the Warsaw Convention, he did so subject to the reservation, provided for in the Additional Protocol, 49 Stat. 3025, that the Warsaw Convention shall not apply to international transportation that may be "performed by the United States," id. at 3013. It is urged that because defendant's plane was regularly and in this instance chartered by the United States for the transportation of military cargo and personnel to military destinations this international transportation was "performed by the United States," thereby making the Convention inapplicable. We are of the opinion, however, that the transportation was performed by the Flying Tiger Line, the owner and operator of the aircraft, and that it was performed *for* the United States, not *by* the United States. See Warren v. The Flying Tiger Line, Inc., 234 F.Supp. 223, 231 (S.D.Cal.1964). The regularity of the chartering relationship between the United States and defendant gives us some cause to look upon this analytic distinction with some circumspection. But these doubts are dispelled by the negotiations surrounding the adoption of the Hague Protocol of 1955. See generally, International Conference of Private Air Law, The Hague, September 1955, International Civil

Aviation Organization, Doc. 7686–LC/140.

A draft protocol was prepared by the Legal Committee of the International Civil Aviation Organization at Rio de Janeiro in September 1953 and was submitted to the Hague Conference in September 1955. It sought to amend Article 2 of the Convention to read: "The Convention shall not apply to * * * [c]arriage of persons, cargo and baggage for military authorities by aircraft the whole capacity of which has been reserved by such authorities." The natural inference from this effort to amend the Convention is that without such an amendment the Convention would be applicable to such flights, or at least those proposing the amendment thought so. The proposed amendment was rejected by the Conference, though not because the representatives thought this exclusion was already provided for in Article 2. Instead, the representatives thought it more appropriate to let each individual Contracting Party, if it so chose, to make the Convention inapplicable to flights chartered by the military. Accordingly, a nation adhering to the Protocol was granted the legal power to declare that the Convention shall not apply to military charter flights on aircraft registered in that country, Article XXVI, Hague Protocol (Protocol Amending Convention for the Unification of Certain Rules to International Carriage by Air, The Hague, September 28, 1955), S.Doc.No. Executive H., 86th Cong., 1st Sess. The United States has not yet ratified the Hague Protocol and obviously has not made the requisite declaration under that Protocol. The unavoidable conclusion is that the Warsaw Convention, as it is presently binding on the United States, is applicable to the flight in this suit.

The determination that the Warsaw Convention is applicable is not the end of our problems. The significance of this fact remains to be decided. The most controverted issues in this litigation involve the effect of the Convention on plaintiffs' choice of forum (Article 28 (1)) and the limitation on defendant's liability (Articles 3(2), 22(1) and 25).

### I. Choice of Forum

Article 28(1) of the Warsaw Convention provides:

> "An action for damages must be brought, at the option of the plaintiff, in the territory of one of the High Contracting Parties, either before the court of the domicile of the carrier or of his principal place of business, or where he has a place of business through which the contract has been made, or before the court at the place of destination."

■ Defendant argues that Article 28 (1) establishes four "places" *within* the territory of a High Contracting Party where an action for damages can be brought;[1] and that a court located in another "place" within the territory of a High Contracting Party is without subject matter jurisdiction to maintain an action arising out of an airflight covered by the Convention, notwithstanding the internal jurisdictional laws. Defendant moved to dismiss for lack of subject matter jurisdiction on the ground that the District Court for the Southern District of New York was not located in a "place" that satisfied the criteria of Article 28 (1). The principal place of business of the carrier was Burbank, California; the alleged contract of transportation was made at Travis Air Force Base at San Francisco, California; the place of destination was a point in Japan; and

---

1. Authority for defendant's interpretation could be found in the following cases, none of which we find persuasive: e.g., Scarf v. Trans World Airlines, Inc., 4 CCH Aviation Cases ¶ 17,795 (S.D.N.Y. 1955), appeal dismissed, 233 F.2d 176 (2 Cir. 1956); Nudo v. Societe Anonyme Belge D'Exploitation de la Navigation Aerienne, 207 F.Supp. 191 (E.D.Pa. 1962); Winsor v. United Air Lines, Inc., 153 F.Supp. 244 (E.D.N.Y.1957); Galli v. Re-Al Brazilian International Airlines, 29 Misc.2d 499, 211 N.Y.S.2d 208 (Sup. Ct.1961); Woolf v. Aerovias Guest, S.A., 1954 U.S.Av.R. 399 (N.Y.Munic.Ct.1954).

the domicile of the carrier was claimed to be the state of incorporation, Delaware.

However, we read Article 28(1) quite differently. The "places" specified refer to the High Contracting Parties, not to areas within a particular High Contracting Party. An action may be brought, at the option of the plaintiff, in the territory of a High Contracting Party, if the domicile of the carrier, the principal place of business of the carrier, the place of business at which the contract was made, or the place of destination is within that country. Plaintiff's choice of forum within that country is governed by the internal law, with all its intricacies and complexities, not by the Warsaw Convention. Pardonnet v. Flying Tiger Line, Inc., 233 F.Supp. 683 (N.D.Ill.1964); Pitman v. Pan American World Airways, Inc., 223 F.Supp. 887 (E.D.Pa.1963); Spencer v. Northwest Orient Airlines, Inc., 201 F.Supp. 504 (S.D.N.Y.1962); see McKenry, Judicial Jurisdiction Under the Warsaw Convention, 29 J. Air L. & Com. 205 (1963); Robbins, Jurisdiction Under Article 28 of the Warsaw Convention, 9 McGill L.J. 352 (1963).

■ The basic unit of international law is the nation-state and it is fair to assume, absent clear indications to the contrary, that Article 28(1), was written with reference to nation-states, not to areas and subdivisions of nation-states. The minutes of negotiations surrounding the drafting of the Treaty do not reveal the slightest concern with the problems relating to choice of forum within a nation-state, and in fact the discussion on Article 28(1) contains some indications that the drafters merely attempted to control choice of forum at the level of nation-states. See Minutes of II Conférence Internationale de Droit Privé Aérien, 4–12 Octobre 1929, Varsovie, ICAO Doc. 7838; Calkins, 26 J. Air L. & Com. 217, 229 (1959). The United States Senate certainly did not indicate that it understood that the Warsaw Convention would have any impact upon the rules governing the choice of forum within the federal system, or among the various states, see 78 Cong. Rec. 11577 (1934).

■ An analysis of the text leads us to the same conclusion. Under our interpretation plaintiff's choice of forum is restricted to the High Contracting Parties and it is further restricted to a High Contracting Party that is one of the enumerated places, thereby disqualifying, for example, the forums in the High Contracting Party where the accident fortuitously occurred, see Calkins, supra, p. 231, or those in the High Contracting Party where the passenger was domiciled, or those in other High Contracting Parties that had absolutely no contact with the flight, carrier, or passenger. Under defendant's interpretation it would be difficult to determine the geographical bounds of the "places" referred to: would they be cities, countries, states, judicial districts, circuits, provinces, cantons, or regions? On the other hand, if the enumerated places referred to High Contracting Parties the "places" can be given a more stable and uniform geographical definition—the territory of a High Contracting Party, a concept that is introduced in Article 1 of the Convention.

■ The United States certainly qualifies as one of the "places" enumerated in Article 28(1) and that is sufficient basis for denying defendant's motion to dismiss for lack of subject matter jurisdiction; the domicile of the carrier, its principal place of business, and its place of business where the contract was made are all within the United States. Nothing we have said precludes a defendant, even if the Warsaw Convention is applicable, from objecting to venue, under 28 U.S.C. § 1391, or moving for a transfer under 28 U.S.C. § 1404(a), or from making similar maneuvers in the state systems. But in such an instance the choice of forum will be governed by the internal rules of the High Contracting Party, not the Warsaw Convention. Judge Wyatt, in passing on defendant's motion, did not consider whether the proper venue of this action was the

Southern District under § 1391, or whether defendant was entitled to a transfer under § 1404(a). Defendant did not object to venue or move to transfer and its time for doing so had long passed; defendant answered in May 1959, and had not moved to dismiss until almost four years later, in February 1963. Moreover, nothing we have said should be interpreted as passing on the question whether a defendant would be entitled to a dismissal for lack of subject matter jurisdiction (a right that could be asserted by a party or the court at any stage of a proceeding, see, e. g., Rule 12(h), Federal Rules of Civil Procedure) if the United States is not one of four enumerated "places" or Article 28(1) (see, e. g., McKenry, supra, at 225 n. 68). Compare, e. g., Mason v. British Overseas Airways Corp., 1961 U.S.Av.R. 617 (S.D.N.Y.1956) (treating Article 28(1) as relating to "venue") with, e. g., Nudo v. Societe Anonyme Belge D'Exploitation de la Navigation Aerienne, 207 F.Supp. 191 (E.D.Pa.1962) and Martino v. Trans World Airlines, Inc.,*1961 U.S.Av.R. 651 (N.D.Ill.1961), treating Article 28(1) as relating to "jurisdiction").

## II. Limitation on Liability

After Judge Wyatt denied defendant's motion to dismiss, and declined to make the ruling that would have enabled defendant to appeal the interlocutory order at once, 28 U.S.C. § 1292(b), the case proceeded to trial before Judge Palmieri and a jury. The jury returned a verdict for plaintiffs, but limited the damage award to the maximum provided by the Warsaw Convention.

The Warsaw Convention controlled the question whether defendant could be liable for damages resulting for the death from the crash of its aircraft (Article 17) and it also determined the standard of conduct. Liability would attach unless defendant proved either that it took all necessary measures to avoid the accident or that it was impossible to take such measures (Articles 17 and 20). The jury found that defendant failed to prove this.

Plaintiffs' primary concern was to avoid the limitation of damages imposed by Article 22 of the Convention. Plaintiffs argued that the carrier was precluded from availing itself of the Convention's limitation on liability because,[2] first, the accident was caused by the "wilful misconduct" of the carrier (Article 25), secondly, the passenger ticket was never delivered to decedent (Article 3(2)), and thirdly, even if the ticket was in fact delivered to decedent, it was never *adequately* delivered to him as required by Article 3(2).[3] The jury decided that plaintiffs had failed to prove that there was "wilful misconduct" on the part of the carrier and that plaintiffs had failed to prove that no ticket was ever delivered to the decedent. The damage award was therefore confined to the limitation of the Warsaw Convention. We are of the opinion, however, that as a matter of law the delivery of the ticket was not adequate and that the limitation on damages of the Convention is inapplicable.

We read Article 3(2) to require that the ticket be delivered to the passenger in such a manner as to afford him a reasonable opportunity to take measures to protect himself against the limitation of liability. Such self-protective measures, could consist of, for example,

2. Plaintiffs also argued that the limitation of liability of the Convention was inapplicable because this was a military charter flight and hence "performed by the United States." The full thrust of the argument could only be that the Convention as a whole is inapplicable to this flight, an argument that was disposed of previously, supra p. 853 and one that is inconsistent with plaintiffs' use of the standard of liability established by the Convention.

3. Article 3(2): "The absence, irregularity, or loss of the passenger ticket shall not affect the existence or the validity of the contract of transportation, which shall none the less be subject to the rules of this convention. Nevertheless, if the carrier accepts a passenger without a passenger ticket having been delivered he shall not be entitled to avail himself of those provisions of this convention which exclude or limit his liability."

deciding not to take the flight, entering a special contract with the carrier, or taking out additional insurance for the flight. The Convention specifically provides that "the carrier and passenger may agree to a higher limit of liability" (Article 22(1)) and there would be little reason to make this provision, to require that the ticket state that the liability of the carrier is limited (Article 3(1) (e)), and to require that such a ticket be delivered to the passenger unless the Convention also required that the ticket be delivered in such circumstances as to afford the passenger a reasonable opportunity to take these self-protective measures. The delivery requirement of Article 3(2) would make little sense if it could be satisfied by delivering the ticket to the passenger when the aircraft was several thousand feet in the air. The specific language of Article 3(2), making the limitation on liability unavailable "if the carrier *accepts a passenger* without a passenger ticket having been delivered," lends substantial support to our position. This position is not necessarily inconsistent with Ross v. Pan American Airways, Inc., 299 N.Y. 88, 97, 85 N.E.2d 880, 885, 13 A.L.R.2d 319 (1949), which merely held that the limitation on liability does not depend "for its existence and validity on express assent thereto by the passenger." That case did not decide whether the ticket must be delivered in such a maner as to provide the passenger with a reasonable opportunity to take self-protective measures. Compare also Grey v. American Airlines, Inc., 227 F.2d 282 (2 Cir. 1955), cert. denied, 350 U.S. 989, 76 S.Ct. 476, 100 L.Ed. 855 (1956), affirming 95 F.Supp. 756 (S.D.N.Y.1950).

■ Whether the ticket was delivered to the passenger in such a manner as to afford him a reasonable opportunity to take self-protective measures depends in each case on the particular factual circumstances. It is a test that is to be applied by the jury on the evidence before it. We are of the opinion, however, that a jury could not have reasonably found that the delivery of the ticket to the decedent, Lieutenant Mertens, was adequate and we therefore hold as a matter of law that the delivery was inadequate and that the limitation of liability of the Warsaw Convention is inapplicable.

■ The testimony of defendant's own ticket dispatcher at the Base was the only evidence presented on the question of delivery, as the crew and the other passenger on the plane were killed. The ticket dispatcher testified that the ticket was delivered to Lieutenant Mertens only after he had boarded the plane; that the material Lieutenant Mertens was accompanying under military orders was already loaded on the plane; and that, at the time of delivery, the aircraft was parked on the ramp about ready to take off. We also base our conclusion on the fact that presumably Lieutenant Mertens would have disobeyed orders if he left the material unaccompanied by disembarking after receiving the ticket to, for example, obtain flight insurance; and that the statement concerning the limitation of liability was printed in such a manner as to virtually be both unnoticeable and unreadable, especially in an aircraft about to take off. Under all these circumstances it could not be said that Lieutenant Mertens had a reasonable opportunity to take any measures to protect himself against the limitation of liability, regardless of the fact that the measures available to him might have been circumscribed because he was a military courier.

■ We therefore vacate the judgment below, which was based on the view that the limitation of liability of the Warsaw Convention is applicable and which awarded plaintiffs the Convention's maximum, $8,291.87. On remand it is only necessary to have a new trial on the issue of the amount of damages. Judge Palmieri wisely submitted this case to the jury with special interrogatories, Rule 49(b), Federal Rules of Civil Procedure, and there is no reason why the jury's answers to the interrogatories establishing defendant's liability should be disturbed. The error of law we find relates only to the amount of damages,

and there is no basis for believing that this error infected any other aspect of the jury's verdict. If any assessment of defendant's culpability is necessary to determine the amount of damages under the applicable law, see infra p. 858, the jury's answers to certain other interrogatories should be sufficient. The jury specifically found that defendant had failed to take all necessary measures to avoid the accident and that it was not impossible to take such measures, but that this dereliction did not amount to wilful misconduct.

█ Nothing in this opinion should be interpreted as necessarily implying that because the limitation of damages of the Convention is inapplicable, there can be no limitation upon the damages plaintiffs may be entitled to. Conceivably a concerned jurisdiction might, quite independently of the Convention, impose a limitation on the amount of damages recoverable for a wrongful death; and then the question would have to be faced whether the limitation on damages by the Convention is the exclusive limitation on damages for death caused by the crash of an aircraft during a flight covered by the Convention. Cf. Ass'n of the Bar of The City of N. Y., The Warsaw Convention as Amended by the Hague Protocol, 26 J. Air L. & Com. 255, 261 (1959). However, apparently none of the jurisdictions [4] that might possibly be concerned with this issue have rules limiting the amount of recovery, and there is thus no need to resolve that question now. Nor is there any need to determine which law governs if a conflict developed, compare Pearson v. Northeast Airlines, Inc., 309 F.2d 553, 92 A.L.R.2d 1162 (2 Cir. 1962), cert. denied, 372 U.S. 912, 83 S.Ct. 726, 9 L.Ed.2d 720 (1963). But

seemingly some choice of law must be made regarding the issue as to which items of damage can be properly included in the award, for example, whether Lieutenant Mertens' parents could recover for their mental pain and anguish as well as their pecuniary loss. It seems clear that the Warsaw Convention left this issue, as it did other issues, such as who are the proper beneficiaries of a damage award, to the internal law of the parties to the Convention, see Komlos v. Compagnie Nationale Air France, 209 F.2d 436 (2 Cir. 1953), cert. denied, 348 U.S. 820, 75 S.Ct. 31, 99 L.Ed. 646 (1954), affirming 111 F.Supp. 393, 401 (S.D.N.Y.1953). The parties and district court below have uncritically assumed, in accordance with the systematics of the first Restatement on Conflict of Laws that this issue is to be controlled by the law of the place of accident (Japan), ibid. Without passing judgment on this issue, since it will presumably be reconsidered on remand, it will suffice to note that under Klaxon Co. v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941), the federal diversity court below is to follow the New York rules on conflict of laws,[5] and that Babcock v. Jackson, 12 N.Y.2d 473, 240 N.Y.S.2d 743, 191 N.E. 2d 279, 95 A.L.R.2d 1 (1963), has ushered in a new regime for conflict of laws for New York, at least. Under this new mode of analysis it might well turn out that the law of the jurisdiction where the aircraft crashed should not govern the issue as to which items or types of damage could be recovered by plaintiffs.

The order denying defendant's motion to dismiss is affirmed, the judgment below is vacated, and the case is remanded for a new trial on the issue of damages.

4. Japan (the place of the accident), California (the place of departure and apparently where decedent was stationed), and New Jersey (apparently decedent's non-military domicile, his parents' domicile, and the state of administration).

5. There is no indication that the Warsaw Convention sought to establish its own uniform conflict-of-laws rule on this issue.