John LISI, etc., et al., Plaintiffs,

v.

ALITALIA–LINEE AEREE ITALIANE, S.p.A., Defendant.

Nos. 60 Civ. 4365, 61 Civ. 3426, 63 Civ. 1734–1736.

United States District Court
S. D. New York.

April 1, 1966.

Theodore E. Wolcott, New York City, for plaintiffs.

Condon & Forsyth, New York City (George N. Tompkins, Jr., New York City, of counsel), for defendant.

MacMAHON, District Judge.

These are consolidated actions for death, personal injuries or property damage suffered by passengers in a crash of defendant's airplane on February 26, 1960, in Shannon, Ireland, while en route from Rome to New York. Plaintiffs are residents and citizens of New York, and defendant is an Italian corporation. Jurisdiction is based on diversity.

Plaintiffs move for partial summary judgment dismissing all affirmative defenses which are based on the exclusion or limitation of liability provisions (Articles 20 and 22) of the Warsaw Convention,[1] 49 Stat. 3000 (1934). All of the evidentiary facts material to the motion appear on the face of the tickets issued to the passengers on the flight involved, and there is no dispute about them.[2] Plaintiffs claim that these exculpatory defenses are not available to an airline unless the airline delivers a passenger ticket and, where applicable, a baggage check, which notify the passenger that the exclusion or limitation of liability provisions of the Warsaw Convention are applicable to the flight, and that the tickets and checks delivered here did not notify the passengers of such provisions. Defendant claims that if a ticket and check are delivered to a passenger before departure, such defenses are automatically applicable to flights between nations adhering to the Convention even though the ticket and check do not notify the passenger of such provisions, and that, in any event,

---

1. The official title is "Convention for the Unification of Certain Rules Relating to International Transportation by Air." With but a single reservation immaterial here, adherence was advised June 15, 1934; declared June 27, 1934; and proclaimed October 29, 1934. See 49 Stat. 3000 et seq. (1934).

Article 20(1) provides:

"The carrier shall not be liable if he proves that he and his agents have taken all necessary measures to avoid the damage or that it was impossible for him or them to take such measures."

Article 22 provides:

"(1) In the transportation of passengers the liability of the carrier for each passenger shall be limited to the sum of 125,000 francs [$8,300] * * *.

(2) In the transportation of checked baggage and of goods, the liability of the carrier shall be limited to a sum of 250 francs per kilogram, unless the consignor has made, at the time when the package was handed over to the carrier, a special declaration of the value at delivery and has paid a supplementary sum if the case so requires. In that case the carrier will be liable to pay a sum not exceeding the declared sum, unless he proves that that sum is greater than the actual value to consignor at delivery.

(3) As regards objects of which the passenger takes charge himself the liability of the carrier shall be limited to 5,000 francs per passenger."

On November 15, 1965, the United States formally denounced the Warsaw Convention, effective May 15, 1966, unless the airlines serving the United States agree to raise the limitation on liability to $75,000, and ultimately to $100,000. See Kreindler, The Denunciation of the Warsaw Convention, 31 J.Air L. & Com. 291 (1965). Such denunciation does not affect these actions.

2. The parties have submitted affidavits complying with Rule 9(g) of the General Rules of the United States District Courts for the Southern and Eastern Districts of New York.

the tickets and checks delivered here so notified the passengers.

■ The Warsaw Convention specifies that the provisions of the Convention which exclude or limit an airline's liability are unavailable unless the airline delivers a passenger ticket and baggage check.[3] The Convention also requires that the ticket and check contain "[a] statement that the transportation is subject to the rules relating to liability established by this convention."[4] Read together, the intent of these requirements is to afford the passenger a reasonable opportunity to take measures to protect himself against the airline's exclusion or limitation of its liability. Indeed, the Convention specifically provides that "the carrier and the passenger may agree on a higher limit of liability."[5] Manifestly, if the ticket and check delivered by the airline fail to notify the passenger that the exclusion or limitation provisions of the Convention are applicable, the passenger is not afforded a reasonable opportunity to protect himself by deciding not to take the flight, entering into a special contract with the carrier, or taking out additional insurance.

■ We hold, therefore, that compliance with the Convention requires not mere physical delivery of a ticket and check before departure but delivery of a ticket and check which notify the passenger that the provisions of the Convention which exclude or limit liability are applicable.[6] Cf. Mertens v. Flying Tiger Line, Inc., 341 F.2d 851 (2d Cir.), cert. denied, 382 U.S. 816, 86 S.Ct. 38, 15 L.Ed.2d 64 (1965); Warren v. Flying Tiger Line, Inc., 352 F.2d 494 (9th Cir. 1965); Block v. Compagnie Nationale Air France, 229 F.Supp. 801, 808 (N.D. Ga.1964); Sand, Air Carriers' Limitation of Liability and Air Passengers' Accident Compensation under the Warsaw Convention, 28 J. Air L. & Com. 260, 262–263 (1962). Thus, if the tickets and checks issued here did not so notify the passenger, the challenged affirmative defenses are unavailable and must be dismissed.

We are of the opinion that a jury could not reasonably find that the passenger tickets and baggage checks delivered here notified the passengers that the exclusion or limitation provisions of the Convention were applicable and, accordingly, hold as a matter of law that defendant

---

3. Article 3(2) provides in pertinent part: "[I]f the carrier accepts a passenger without a passenger ticket having been delivered, the carrier shall not be entitled to avail himself of those provisions of the convention which exclude or limit his liability."
Article 4(4) provides in pertinent part: "[I]f the carrier accepts baggage without a baggage check having been delivered, or if the baggage check does not contain the particulars set out at * * * [4(3)] (h) above, the carrier shall not be entitled to avail himself of those provisions of the convention which exclude or limit his liability."

4. Articles 3(1) (e) and 4(3) (h).

5. Article 22(1).

6. Article 4(4), pertaining to baggage checks (see footnote 3), specifically bars a carrier from excluding or limiting its liability under the Convention if it (a) fails to deliver a baggage check, or (b) delivers a baggage check which does not contain the required statement. However, Article 3(2), pertaining to passenger tickets, specifies only one ground for barring a carrier from excluding or limiting liability, namely, failure to deliver a passenger ticket. Defendant argues from this that in cases involving personal injury and death, the absence of the required statement from the passenger ticket is meaningless, and that so long as a passenger ticket is delivered before the passenger boards the plane, the carrier can exclude or limit liability. To support this contention, it cites Grey v. American Airlines, Inc., 95 F.Supp. 756 (S.D.N.Y. 1950), aff'd, 227 F.2d 282 (1955), cert. denied, 350 U.S. 989, 76 S.Ct. 476, 100 L.Ed. 855 (1956). There it was held that a carrier could limit its liability for wrongful death even though it had failed to comply with Article 3(1) (c) by stating in the passenger ticket all the agreed places where the plane was to stop. However, we think the difference in importance between the statements required by Articles 3(1) (e) and 3(1) (c) destroys any argument that their absence from the ticket should be treated alike.

cannot exclude or limit its liability under the Convention in the case at bar. We think one look at the tickets and checks, which were combined in the form of small printed booklets, compels this conclusion. We set forth below replicas of the only applicable pages of typical tickets delivered here:

Outside Front Cover

# CONDITIONS OF CONTRACT

Pag. 4

1. As used in this contract, «ticket» means «Passenger Ticket and Baggage Check», «carriage» is equivalent to «transportation», and «carrier» includes the air carrier issuing this ticket and all air carriers that carry or undertake to carry the passenger or his baggage hereunder or perform any other service incidental to such air carriage; «damage» includes death, injury, delay, loss or other damage of whatsoever nature arising out of or in connection with carriage or other services performed by carrier incidental thereto. Carriage to be performed hereunder by several successive carriers is regarded as a single operation.

2. a) Carriage hereunder is subject to the rules and limitations relating to liability established by the Convention for the Unification of Certain Rules relating to International Carriage by Air, signed at Warsaw, October 12, 1929, (hereinafter called «the Convention») unless such carriage is not «international carriage» as defined by the Convention. (See carrier's tariffs, conditions of carriage (or such definition). Carrier's name may be abbreviated in the ticket, the full name and its abbreviation being set forth in carrier's tariffs, conditions of carriage, regulations or timetables; and carrier's address shall be the airport of departure shown opposite the first abbreviation of carrier's name in the ticket; and for the purpose of the Convention the agreed stopping places (which may be altered by carrier in case of necessity) are those places, except the place of departure and the place of destination, set forth in this ticket and any conjunction ticket issued herewith, or, as shown in carrier's timetables as scheduled stopping places on the passenger's route.

b) To the extent not in conflict with the foregoing, all carriage hereunder and other services performed by each carrier are subject to (i) applicable laws (including national laws implementing the Convention or extending the rules of the Convention to carriage to carriage which is not «international carriage» as defined in the Convention), government regulations, orders and requirements, (ii) provisions herein set forth, (iii) applicable tariffs, and (iv) except in transportation between a place in the United States and any place outside thereof and also between a place in Canada and any place outside thereof, conditions of carriage, regulations and timetables (but not the time of departure and arrival times) of such carrier, which are made part hereof and which may be inspected at any of its offices and at airports from which it operates regular services.

c) Unless expressly so provided, nothing herein contained shall waive any limitation of liability of carrier existing under the Convention or applicable laws.

3. Insofar as any provision contained or referred to herein, may be contrary to a law, government regulation, order or requirement, which severally cannot be waived by agreement of the parties, such provision shall remain applicable and be considered as part of the contract of carriage to the extent only that such provision is not contrary thereto. The invalidity of any provision shall not affect any other part.

4. Subject to the foregoing:

a) Liability of carrier for damages shall be limited to occurrences on its own lines, except in the case of checked baggage as to which the passenger also has a right of action against the first or last carrier. A carrier issuing a ticket or checking baggage for carriage over the lines of others does so only as agent.

b) Carrier is not liable for damage to passenger or unchecked baggage unless such damage is caused by the negligence of carrier.

c) Carrier is not liable for any damage directly and solely arising out of its compliance with any laws, government regulations, orders or requirements, or from failure of passenger to comply with same.

d) Any liability of carrier is limited to 250 French gold francs (consisting of 65½ milligrams of gold with a fineness of nine hundred thousandths) or its equivalent per kilogram in the case of checked baggage, and 5,000 such French gold francs or its equivalent per passenger in the case of unchecked baggage or other property, unless a higher value is declared in advance and additional charges are paid pursuant to carrier's regulations. In that event the liability of carrier shall be limited to such higher declared value. In no case shall the carrier's liability exceed the actual loss suffered by the passenger. All claims are subject to proof of amount of loss.

e) Any exclusion or limitation of liability of carrier under these conditions shall apply to agents, servants or representatives of the carrier acting within the scope of their employment and also to any person whose aircraft is used by carrier for carriage and his agents, servants or representatives acting within the scope of their employment.

5. Checked baggage carried hereunder will be delivered to the bearer of the baggage check upon payment of all unpaid sums due carrier under carrier's contract of carriage or tariff.

6. When validated, this ticket is good for carriage from the airport at the place of departure to the airport at the place of destination via the route shown herein and for the applicable class of service and is valid for one year from the date of commencement of flight except as otherwise provided in carrier's regulations. Each flight coupon will be accepted for carriage on the date and flight for which accommodations have been reserved; when flight coupons are issued on an «open date» basis, accommodation will be reserved upon application subject to availability of space.

7. Carrier undertakes to use its best efforts to carry the passenger and baggage with reasonable dispatch, but no particular time is fixed for the commencement or completion of carriage. Subject thereto, carrier may without notice substitute alternate carriers or aircraft and may alter or omit the stopping place shown on the face of the ticket in case of necessity. Times shown in timetables or elsewhere are approximate and not guaranteed, and form no part of this contract. Schedules are subject to change without notice. Carrier assumes no responsibility for making connections.

8. The passenger shall comply with all government travel requirements, present all exit, entry, and other documents required by the law, and arrive at the airport by the time fixed by carrier or, if no time is fixed, sufficiently in advance of flight departure to permit completion of government formalities and departure procedures. Carrier is not liable for loss or expense due to passenger's failure to comply with this provision.

9. No agent, servant or representative of carrier has authority to alter, modify or waive any provision of this contract.

10. No action shall lie in the case of damage to baggage, unless the person entitled to delivery complains to the carrier forthwith after the discovery of the damage, and, at the latest, within seven days from the date of receipt; and in the case of delay, unless the complaint is made at the latest within 21 days from the date on which the baggage has been placed at his disposal. Every complaint must be made in writing and dispatched within the times aforesaid. Where carriage is not «international carriage» as defined in the Convention, failure to give notice shall not be a bar to suit where claimant proves that (i) it was not reasonably possible for him to give such notice, or (ii) that notice was not given due to fraud on the part of carrier, or (iii) the management of carrier had knowledge of damage to passenger's baggage.

11. Any right to damages against carrier shall be extinguished unless an action is brought within two years reckoned from the date of arrival at the destination, or from the date on which the aircraft ought to have arrived, or from the date on which the carriage stopped. The method of calculating the period of limitation shall be determined by the law of the court seized of the case.

Carriage effected wholly within the territory of Italy, which cannot be considered «international carriage» as defined by the Warsaw Convention, is governed by Italian Laws and Regulations concerning Contracts of Carriage by Air.

One of the Coupons

The footnotes printed in microscopic type at the bottom of the outside front cover and coupons, as well as condition 2(a) camouflaged in Lilliputian print in a thicket of "Conditions of Contract" crowded on page 4, are both unnoticeable and unreadable. Indeed, the exculpatory statements on which defendant relies are virtually invisible. They are ineffectively positioned, diminutively sized, and unemphasized by bold face type, contrasting color, or anything else. The simple truth is that they are so artfully camouflaged that their presence is concealed.

"Lilliputian typography," Eck v. United Arab Airlines, Inc., 20 App.Div.2d 454, 457, n. 2, 247 N.Y.S.2d 820, 824, rev'd on other grounds, 15 N.Y.2d 53, 255 N.Y.S.2d 249, 203 N.E.2d 640 (1964), which must be read through "a magnifying glass," Warren v. Flying Tiger Line, Inc., 234 F.Supp. 223, 230 (S.D.Cal. 1964), aff'd, 352 F.2d 494 (9th Cir. 1965), is at war with the intent of the Convention. This was recognized by our Court of Appeals in *Mertens* where one of the reasons for precluding the carrier from limiting its liability under the Convention was that the required statement "was printed in such a manner as to virtually be unnoticeable and unreadable * * *." Mertens v. Flying Tiger Line, Inc., supra, 341 F.2d at 857.

We hold, therefore, that defendant failed to comply with Articles 3(1)(e) and 4(3)(h) of the Warsaw Convention and that the challenged affirmative defenses are unavailable to defendant in these actions.[7]

Our decision involves a controlling question of law which we think should be immediately appealed under 28 U.S.C. § 1292(b). Cf. Warren v. Flying Tiger Line, Inc., supra, 352 F.2d at 495. We have done our best to reconcile *Mertens* and *Grey* (see footnote 6), but until the Court of Appeals has had the last word, there will remain substantial ground for difference of opinion on whether failure to notify in accordance with Article 3(1)(e) has the effect we say, and whether the defendant failed to notify here as a matter of law. To clear the air on the law applicable to the facts shown here, an appeal is advisable. Moreover, an immediate appeal may materially advance the ultimate termination of this litigation.

Accordingly, plaintiffs' motions for partial summary judgment dismissing defendant's affirmative defenses are granted, and trial of the actions stayed pending decision of the Court of Appeals on the controlling question of whether the challenged affirmative defenses are available to defendant in the light of the facts shown here.

So ordered.

---

7. Plaintiffs also argue that the statements in the tickets and checks are wholly inadequate because framed in conditional terms. However, we think this argument meritless. If the statements were noticeable and readable, the passenger would have been sufficiently alerted to defendant's intention to use the Convention, wherever applicable, as a shield to ward off liability. This being so, the passenger could have called into play a variety of protective measures. Accord, Seth v. British Overseas Airlines Corp., 329 F.2d 302 (1st Cir.), cert. denied, 379 U.S. 858, 85 S.Ct. 114, 13 L.Ed.2d 61 (1964); Samuel Montague & Co. v. Swiss Air Transport Co., English Court of Appeals, Jan. 21, 1966.
A third argument made by plaintiff Como representing members of the Disclafani family, whose journey originated in Tunisia, is that since the official language of Tunisia is Arabic, and the tickets were printed in English and Italian, the Disclafanis were not given notice. We do not reach this argument here. For the purposes of this motion, plaintiff Como has withdrawn a fourth argument that Tunisia was not a party to the Convention at the time the Disclafanis commenced their journey.