851 F.Supp. 826 (1994)
Carlos LUNA, et al., Plaintiffs,
v.
COMPANIA PANAMENA DE AVIACION, S.A., et al., Defendants.
Civ. A. No. H-93-1974.
United States District Court, S.D. Texas, Houston Division.
March 30, 1994.
*827 *828 Harold D. Dampier, Dampier & Watson, Houston, TX, Lee S. Kreindler, Steven R. Pounian, Robert Spragg, Kreindler & Kreindler, New York City, for plaintiffs.
Jad J. Stepp, Eastham Watson Dale & Forney, Houston, TX, for Compania Panamena De Aviacion, S.A.
David J. Beck, Beck Redden & Secrest, Houston, TX, Bruce D. Campbell, Perkins Coie, Seattle, WA, for Boeing Co.
Richard H. Caldwell, Mayor Day Caldwell & Keeton, Houston, TX, for Rockwell Intern. Corp. and Rockwell-Collins Intern., Inc.
James J. Sentner, Jr., Haight Gardner Poor & Havens, Houston, TX, for Honeywell Inc.

MEMORANDUM AND ORDER
ROSENTHAL, District Judge.
This suit arises out of the death of Clariza Bernal Luna in the crash of a Boeing 737-200 aircraft in the vicinity of Tucuti, Panama. Pending before this court are a motion to dismiss for lack of personal jurisdiction filed by Compania Panamena De Aviacion, S.A. ("COPA"), (Docket Entry No. 5); a motion to remand filed by plaintiffs, (Docket Entry No. 9); a motion for leave to amend filed by plaintiffs, (Docket Entry No. 24); and a motion for leave to file an untimely answer filed by defendant, The Boeing Company ("Boeing"), (Docket Entry No. 29). For the reasons set forth below, COPA's motion to dismiss is GRANTED; plaintiffs' motion to remand is DENIED; plaintiffs' motion for leave to amend is GRANTED; and Boeing's motion to file an untimely answer is GRANTED.

1. Background
On June 6, 1992, COPA Flight No. 201, enroute from Panama City, Panama to Cali, Colombia, crashed in the vicinity of Tucuti, Panama. All passengers were killed, including Clariza Bernal Luna ("Clariza Luna").
Clariza Luna was a permanent resident of the United States who lived with her husband and two children in Houston, Texas. On June 3, 1992, Clariza Luna purchased a ticket for round trip passage between Houston and Cali, Colombia from Excelsior Travel and Tours ("Excelsior Travel"), a Houston travel agency. The ticket provided for travel on June 6, 1992 aboard Continental Airlines from Houston to Panama City, Panama, to connect with the COPA flight 201 to Cali, Colombia. The ticket allowed a return on the same carriers, following the same route, on July 2, 1992. Clariza Luna paid Excelsior Travel $575 for the ticket, including $258 for the COPA flight.
Clariza Luna's COPA ticket was issued by Excelsior Travel pursuant to a standard airline interline agreement. Under this agreement, other carriers, including Continental, are authorized to make reservations and issue tickets for COPA flights. Excelsior Travel issued Clariza Luna's tickets against Continental ticket stock and forwarded the full $575, less Excelsior Travel's commission, to the Airline Reporting Company, which in turn paid the full amount to Continental. Under the interline agreement, Continental paid COPA for the COPA segment of Clariza Luna's flights to and from Colombia. The *829 payment was made through the Airline Clearing House in New York City.
COPA is a corporation organized and existing under the laws of Panama, with its principal place of business in Panama City, Panama. COPA is an airline engaged in the transportation of passengers, cargo, and mail between points in Central America, the Caribbean, Mexico, and Colombia. COPA has never been authorized to conduct any flights to Texas and has never flown any flights into Texas. COPA has never been licensed or authorized to do business in Texas, and has never held itself out as doing business in Texas. COPA has no authorized agent for service of process in Texas. COPA does not maintain any office in Texas, own any property in Texas, or pay taxes to Texas. COPA has never employed any sales personnel, service personnel, soliciting agents, general sales agents, or any other employees in Texas.
COPA does not advertise in Texas and does not maintain any type of telephone listing, business listing, or mailing address in Texas. COPA does subscribe to a 1-800 telephone service which can be accessed by a telephone located in the United States, including Texas. This telephone service is not advertised or published within Texas. Since 1991, COPA has authorized some independent travel agents located in Texas to make reservations and issue tickets on COPA flights, and has given these agents COPA "plates" to use in issuing COPA tickets. Sales of COPA tickets through such agents totaled $7,957 in 1991; $31,934 in 1992; and $22,948 through May 1993. Tickets for COPA flights are also sold through interline agreements with other airlines. Upon request by travel agents who are located in Texas, COPA has sent brochures and flight schedules.
COPA has a contract with a company located in Texas for the overhaul of certain jet engines. This company has overhauled two COPA engines since this accident, on aircraft not involved in this accident. Since the accident, COPA employees have travelled to Texas in connection with the overhaul of COPA jet engines, and COPA ramp agents have travelled to Texas for training by Continental in handling Continental Airlines flights arriving in Panama. COPA has communicated by facsimile and telephone with business groups within Texas. A COPA representative also attended a travel seminar in Texas, and COPA representatives have met with Continental representatives in Texas regarding a proposed interline agreement.

2. Subject Matter Jurisdiction

A. Diversity Jurisdiction
Plaintiffs plead that defendant Rockwell-Collins International, Inc. ("Rockwell-Collins") is a Texas corporation, precluding jurisdiction based on diversity between the parties. At a hearing held on September 29, 1993, Judge Hughes dismissed Rockwell-Collins from this action. (Docket Entry No. 35, p. 33). Plaintiffs now seek to add Collins Radio Company ("Collins") as a defendant to this suit. Plaintiffs' amended complaint alleges that Collins is a Texas corporation (Docket Entry No. 26, ¶ 8). This court is unable to determine whether diversity jurisdiction exists based on the current record. The issue is whether federal question jurisdiction is present.

B. Federal Question Jurisdiction: The Warsaw Convention
Defendants allege that the Warsaw Convention provides federal question jurisdiction over this case. Federal courts have original jurisdiction over "all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331 (1993). Cases arising out of international air transportation are governed by the Warsaw Convention and are within federal court original jurisdiction. See, e.g., Boehringer-Mannheim Diagnostics, Inc. v. Pan American World Airways, Inc., 737 F.2d 456 (5th Cir.1984), cert. denied, ___ U.S. ___, 105 S.Ct. 951, 83 L.Ed.2d 959 (1985); In re Air Disaster at Lockerbie, Scotland on Dec. 21 1988, 928 F.2d 1267 (2nd Cir.), cert. denied, ___ U.S. ___, 112 S.Ct. 331, 116 L.Ed.2d 272 (1991); Floyd v. Eastern Airlines, Inc., 872 F.2d 1462 (11th Cir.1989), rev'd on other grounds, 499 U.S. 530, 111 S.Ct. 1489, 113 L.Ed.2d 569 (1991); In re *830 Mexico City Aircrash of October 31, 1979, 708 F.2d 400 (9th Cir.1983).
The courts are divided over whether the Warsaw Convention creates an exclusive cause of action and whether the Warsaw Convention preempts state law causes of action. Compare Boehringer-Mannheim Diagnostics, Inc. v. Pan American World Airways, Inc. with In re Air Disaster at Lockerbie, Scotland on Dec. 21, 1988. See also In re Aircrash in Bali Indonesia on April 22, 1974, 684 F.2d 1301, 1311 n. 8 (9th Cir.1982); In re Korean Air Lines Disaster of Sept. 1, 1983, 932 F.2d 1475, 1490 (D.C.Cir.1991) (Mikva, J., dissenting), cert. denied, Dooley v. Korean Air Lines, Ltd., ___ U.S. ___, 112 S.Ct. 616, 116 L.Ed.2d 638 (1991).
The Fifth Circuit has held that the Warsaw Convention creates an exclusive cause of action and that it preempts state law claims for personal injury. Boehringer, 737 F.2d at 458-60. The Second Circuit has agreed. In re Air Disaster at Lockerbie, Scotland, 928 F.2d at 1273-78.
In Boehringer, the Fifth Circuit held that the Warsaw Convention creates an exclusive cause of action against air carriers. 737 F.2d at 458. The court stated its holding as follows:
The essential inquiry is whether the Convention provides the exclusive liability remedy for international air carriers by providing an independent cause of action, thereby preempting state law, or whether it merely limits the amount of recovery for a cause of action otherwise provided by state or federal law. We have not previously addressed this question. We hold today that the Warsaw Convention creates the cause of action and is the exclusive remedy.
Id. The court stated the following reasons for holding that the Warsaw Convention preempts state law:
An obvious major purpose of the Warsaw Convention was to secure uniformity of liability for air carriers..... That uniformity has both an international and intranational application. The law of Texas, as relates to the cause of action, is preempted.
Id. at 459. The Fifth Circuit concluded that the Warsaw Convention preempts state law "in the areas covered." Id.
The reasoning of the Boehringer court was recently followed by the Second Circuit in the case of In re Air Disaster at Lockerbie, 928 F.2d at 1273-78. The Second Circuit concluded that "the existence of separate state causes of action conflicts so strongly with the uniform enforcement of the [Warsaw Convention] that [the normal presumption against preemption] is overcome." Id. at 1278.
Plaintiffs argue that the Warsaw Convention merely limits the amount of damages recoverable against an air carrier and does not create an exclusive cause of action. Plaintiffs cite a line of cases recently decided by the Southern District of Florida. See Clark v. United Parcel Service, Inc., 778 F.Supp. 1209 (S.D.Fla.1991); Alvarez v. Aerovias Nacionales de Colombia, S.A., 756 F.Supp. 550 (S.D.Fla.1991); Calderon v. Aerovias Nacionales de Colombia, Avianca, Inc., 738 F.Supp. 485 (S.D.Fla.1990), appeal dismissed, 929 F.2d 599 (11th Cir.), cert. denied, ___ U.S. ___, 112 S.Ct. 376, 116 L.Ed.2d 327 (1991). However, this court is bound by the controlling precedent of the Fifth Circuit in Boehringer, which held that the Warsaw Convention creates an exclusive cause of action.
Plaintiffs' argument that the Warsaw Convention does not preempt the field but only preempts inconsistent state law is also unpersuasive. Boehringer rejected a state law claim for attorneys' fees because of the need for uniformity in air carrier liability law. 737 F.2d at 459. That uniformity can only be achieved by recognizing the preemptive effect of the Warsaw Convention over state law claims. Id.; Air Disaster at Lockerbie, 928 F.2d at 1274-75.
Article 17 of the Warsaw Convention provides as follows:
The carrier shall be liable for damage sustained in the event of death or wounding of a passenger or any other bodily injury suffered by a passenger, if the accident which caused the damage so sustained took place on board the aircraft or in the course *831 of any of the operations of embarking or disembarking.
49 Stat. 3018. The express language of Article 24 of the Warsaw Convention provides that its terms exclusively govern personal injury claims. 49 Stat. 3020. Under the controlling precedent, the Warsaw Convention provides an exclusive remedy for personal injury claims and preempts all state personal injury causes of action. Plaintiffs' state law claims are preempted by the Warsaw Convention and are within the exclusive jurisdiction of federal court.

C. Right to Removal
An action may be removed from state court to federal court if it could have originally been filed in federal court. 28 U.S.C. §§ 1331, 1441; Caterpillar Inc. v. Williams, 482 U.S. 386, 391, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 318 (1987). Absent complete diversity, a federal question must be present for removal. Id. Federal question jurisdiction exists only if the federal question is present on the face of the complaint. Franchise Tax Board of the State of California v. Construction Laborers Vacation Trust, 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983); see generally Messina v. Tri-Gas Inc., 816 F.Supp. 1163 (S.D.Tex.1993). Under the complete preemption doctrine, "[o]nce an area of state law has been completely preempted, any claim purportedly based on that preempted state law is considered, from its inception, a federal claim, and therefore arises under federal law." Caterpillar, 482 U.S. at 393, 107 S.Ct. at 2430; Franchise Tax Board, 463 U.S. at 23, 103 S.Ct. at 2854.
A court is to look to the substance of the complaint "to determine whether a federal claim necessarily is presented, even if the plaintiff has couched his pleading exclusively in terms of state law." In re Carter, 618 F.2d 1093, 1101 (5th Cir.1980), cert. denied, 450 U.S. 949, 101 S.Ct. 1410, 67 L.Ed.2d 378 (1981). If a state law cause of action is completely preempted by federal law, a complaint stating such a claim can be removed to federal court. Caterpillar, 482 U.S. at 392, 107 S.Ct. at 2430; Franchise Tax Board, 463 U.S. at 23, 103 S.Ct. at 2854.
Fifth Circuit precedent establishes that the Warsaw Convention creates the exclusive cause of action for personal injury liability against the defendants in this case. Boehringer, 737 F.2d at 458-60. The Warsaw Convention completely preempts the state law claims raised by plaintiffs. Id. Plaintiffs' claims, which are covered by the Warsaw Convention, necessarily arise under federal law and were properly removed to federal court. The motion for remand is DENIED.

3. Personal Jurisdiction over COPA
This court's subject matter jurisdiction arises from the Warsaw Convention and possible diversity between the parties. Under either basis, this court looks to the Texas long-arm statute to determine personal jurisdiction. See Interfirst Bank Clifton v. Fernandez, 844 F.2d 279, 282 (5th Cir.1988), modified on other grounds, 853 F.2d 292 (5th Cir.1988); Omni Capital International v. Rudolh Wolff & Co., Ltd., 484 U.S. 97, 106, 108 S.Ct. 404, 411, 98 L.Ed.2d 415 (1987).
The Texas long-arm statute confers jurisdiction to the limit imposed by due process. Schlobohm v. Schapiro, 784 S.W.2d 355 (Tex. 1990). When a nonresident defendant challenges in personam jurisdiction, the plaintiff bears the burden of demonstrating facts sufficient to support jurisdiction. Stuart v. Spademan, 772 F.2d 1185, 1192 (5th Cir. 1985).
The due process requirements of personal jurisdiction are satisfied when the nonresident defendant has purposefully established "minimum contacts" with the forum state such that the maintenance of the suit does not offend traditional notions of "fair play and substantial justice." Asahi Metal Ind. Co. v. Superior Court, 480 U.S. 102, 107-117, 107 S.Ct. 1026, 1030-34, 94 L.Ed.2d 92 (1987); Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985); Villar v. Crowley Maritime Corp., 990 F.2d 1489, 1496 (5th Cir. 1993), cert. denied, ___ U.S. ___, 114 S.Ct. 690, 126 L.Ed.2d 658 (1994). When personal jurisdiction is asserted over a defendant in a suit arising out of or related to the defendant's contact with the forum state, the court *832 is exercising "specific jurisdiction" over the defendant. Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 413, 104 S.Ct. 1868, 1872, 80 L.Ed.2d 404 (1984). If a court exercises personal jurisdiction over a defendant in a case not arising out of or related to the defendant's contact with the forum state, the court is exercising "general jurisdiction" over the defendant. Helicopteros, 466 U.S. at 413, 104 S.Ct. at 1872. To exercise specific jurisdiction, a court must "examine the relationship among the defendant, the forum, and the litigation to determine whether maintaining the suit offends traditional notions of fair play and substantial justice." Southmark Corp. v. Life Investors, Inc., 851 F.2d 763, 772 (5th Cir.1988). To exercise general jurisdiction, a court must determine whether contacts exist that are "sufficiently systematic and continuous to support a reasonable exercise of jurisdiction." Stuart v. Spademan, 772 F.2d 1185, 1191 (5th Cir.1985) (citing Keeton v. Hustler Magazine Inc., 465 U.S. 770, 777-81, 104 S.Ct. 1473, 1480-81, 79 L.Ed.2d 790 (1984)); see also, Holt Oil & Gas Corp. v. Harvey, 801 F.2d 773, 777-80 (5th Cir.1986), cert. denied, 481 U.S. 1015, 107 S.Ct. 1892, 95 L.Ed.2d 499 (1987).

A. Specific Jurisdiction
Plaintiffs allege that this court has specific jurisdiction over COPA because Clariza Luna purchased her ticket in Houston, Texas. A single purposeful contact may be sufficient to create specific jurisdiction when the cause of action arises from that contact. Micromedia v. Automated Broadcast Controls, 799 F.2d 230, 234 (5th Cir. 1986). To determine whether specific jurisdiction over a foreign corporation is present, a court must consider: (1) the quality, nature, and extent of the activity in the forum; (2) the foreseeability of consequences within the forum from outside activities; and (3) the relationship between the contacts and the alleged cause of action. Hydrokinetics, Inc. v. Alaska Mechanical, Inc., 700 F.2d 1026, 1028 (5th Cir.1983), cert. denied, 466 U.S. 962, 104 S.Ct. 2180, 80 L.Ed.2d 561 (1984) (citing Prejean v. Sonatrach, Inc., 652 F.2d 1260, 1268 (5th Cir.1981)). As one court has noted, "[i]n personam jurisprudence has taken a restrictive view of the relationship between causes of action and contacts, seemingly to require virtually a direct link between claim and contacts in order to pursue a specific jurisdiction analysis." Kervin v. Red River Ski Area, Inc., 711 F.Supp. 1383, 1389-90 (E.D.Tex.1989); see also Rittenhouse v. Mabry, 832 F.2d 1380, 1390 (5th Cir.1987).
Clariza Luna purchased her plane ticket from Excelsior Travel in Houston.[1] COPA did not sell Clariza Luna a ticket in Houston. COPA honored the ticket that Clariza Luna purchased in Texas under an interline agreement with Continental. Clariza Luna boarded the COPA airlines flight in Panama City, Panama. COPA maintained the aircraft in Panama. The flight crashed in Panama.
Clariza Luna's death due to the crash of a COPA aircraft in Panama did not result from the fact that she purchased the ticket for her airline travel in Texas. In Russo v. Sea World of Florida, Inc., 709 F.Supp. 39 (D.R.I.1989), the court held that a plaintiff's injury at an amusement park did not arise out of or relate to her purchase of the admission ticket in another forum. "The question of whether a cause of action arises out of or relates to a defendant's forum contact is analogous to the issue of proximate cause in tort law." Id. at 42 (citing W. Keeton, D. Dobbs, R. Keeton & D. Owen, Prosser and Keeton on the Law of Torts § 42 (5th ed. 1984)); see also Marino v. Hyatt Corp., 793 F.2d 427 (1st Cir.1986); Eck v. United Arab Airlines, Inc., 360 F.2d 804, 810 (2nd Cir. 1966). The sale of the airline ticket was not the proximate cause of the plane crash or the injury, necessary for specific jurisdiction over COPA in Texas. Russo, 709 F.Supp. at 42.
Plaintiffs' cause of action does not arise out of any of COPA's contacts with Texas. This wrongful death case arises out of COPA's *833 alleged negligence in aircraft maintenance and operation of a flight that originated in Panama and crashed enroute to Colombia. The sale of an interline ticket in the forum state on Continental Airlines stock is not the basis of plaintiffs' cause of action. Plaintiffs' claims do not arise out of COPA's Texas contacts.
Plaintiffs argue that because Clariza Luna bought her Continental ticket in Texas, and because COPA and Continental had an interline agreement, Texas has personal jurisdiction over COPA. The existence of an interline agreement is not sufficient to subject COPA to jurisdiction in every jurisdiction serviced by Continental. See, e.g., In re Puerto Rico Air Disaster Litigation, 340 F.Supp. 492, 500-01 (D.P.R.1972); Kenny v. Alaska Airlines, 132 F.Supp. 838 (S.D.Cal. 1955). The cases do not hold that the sale of a ticket to a resident of the forum state pursuant to an interline agreement is sufficient for specific jurisdiction over a nonresident airline company.

B. General Jurisdiction
Because plaintiffs' cause of action did not arise out of COPA's contacts with Texas, plaintiffs had to show that Texas had general jurisdiction over COPA. The leading Supreme Court case on general jurisdiction is Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). The Texas Supreme Court had determined that a foreign corporation could be sued in Texas in a suit arising out of a helicopter crash in Peru. The United States Supreme Court reversed. The reversal was premised upon a finding that the corporation's contacts were insufficient to establish general jurisdiction. The harm suffered did not occur in Texas. The alleged misconduct did not take place in Texas. The corporation had substantial contacts with Texas, but the Supreme Court of the United States held that those contacts were insufficient to satisfy the requirements of the due process clause of the Fourteenth Amendment. Id. 466 U.S. at 417-21, 104 S.Ct. at 1874-75.
Plaintiffs argue that the following contacts establish general jurisdiction over COPA under the Texas long-arm statute: (1) the sale of Clariza Luna's ticket by Continental Airlines, through the independent agency Excelsior Travel; (2) COPA's authorization since 1991 of certain independent travel agents in Texas to make reservations and issue tickets in Texas; (3) COPA's issuance of its ticket "plates" to certain Texas travel agents; (4) COPA's interline agreements with various airlines, including Texas-based Continental Airlines; (5) COPA's supply of travel brochures and flight schedules to Texas travel agents in response to their requests; (6) COPA's subscription to "1-800" telephone numbers accessible by telephone from the United States, including Texas; (7) COPA's transmission of information by facsimile to and mail with Texas individuals and businesses; (8) the fact that some COPA engines are overhauled within Texas; (9) the receipt by COPA employees of some flight handling training in Texas; (10) the attendance by a COPA employee at a travel seminar in Texas; and (11) the fact that on one occasion COPA employees met in Texas with Continental's regional director of marketing to discuss a proposed interline agreement.
Under the Fifth Circuit authorities, sufficient contacts between Texas and COPA do not exist for this court to exercise general jurisdiction over COPA. In Bearry v. Beech Aircraft Corp., 818 F.2d 370 (5th Cir.1987), the Fifth Circuit held that the defendant did not have sufficient systematic and continuous contacts with Texas despite the sale of Beech aircraft through seventeen independent Texas dealers, totalling nearly $250 million in revenues. Id. at 372. Beech's Texas contacts included a contract exceeding $72,000 with a Texas corporation and visits by Beech representatives to Texas dealers to "assist them with maintenance problems, to demonstrate new aircraft, and to offer sales incentives to Texas dealers, but only at a dealer's request." Id. at 373. In addition, Beech purchased over $195 million in goods and services from over five hundred Texas vendors under sales agreements with Texas dealers. Id. The Fifth Circuit noted that Beech did not maintain an office in Texas, had no agents in Texas, and had no control over Texas dealers. Id. at 376; see also *834 Patterson v. Dietze, Inc., 764 F.2d 1145, 1147 (5th Cir.1985); Stuart, 772 F.2d at 1192-94. The Fifth Circuit held that Beech's Texas contracts did not permit the exercise of personal jurisdiction by a Texas court. Bearry, 818 F.2d at 377.
In this case, COPA does not maintain an office in Texas, has no agents in Texas, and has no control over Texas travel agents or Continental Airlines. COPA's revenues from the purchase of tickets in Texas are made through bookings made by independent travel agents and by other airlines, not by COPA. COPA does not fly any flights into or out of Texas, does not advertise in Texas, and has not ever been authorized to do business in Texas.
COPA has taken no actions that can be characterized as "purposefully avail[ing] itself of the privilege of conducting activities within the forum state." Hanson v. Denckla, 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958); World-Wide Volkswagen v. Woodson, 444 U.S. 286, 294, 100 S.Ct. 559, 566, 62 L.Ed.2d 490 (1980).
COPA's contacts with Texas are not such that COPA should reasonably anticipate having to defend itself in a Texas court for claims unrelated to its Texas contacts. They do not sum to a "general business presence." Beech, 818 F.2d at 375.
Because there are insufficient contacts to support jurisdiction, the court need not reach the constitutionality of requiring COPA to defend this case in Texas. However, even if the connections could be said to be continuous and systematic, the exercise of general jurisdiction would not be fair and equitable. See Asahi Metal Ind. Co. v. Superior Court, 480 U.S. 102, 119, 107 S.Ct. 1026, 1036, 94 L.Ed.2d 92 (1987) (Brennan, J., concurring in part and in the judgment) (five justices, including Justice Brennan, agreed on this point). In evaluating the reasonableness of the exercise of jurisdiction, Asahi requires an examination of the following factors: (1) the burden on the defendant; (2) the interests of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) the interest of several states. Id. 480 U.S. at 115, 107 S.Ct. at 1034.
This court notes that a Texas forum will bring all the parties into one courtroom for a single resolution, and that Texas has some interest in adjudicating a dispute that involves a Texas consumer. However, COPA's conduct made the basis of this suit occurred in Panama. Texas' interest is limited by the fact that the tort occurred outside Texas. The burden on COPA to defend in Texas is unreasonable in light of the absence of any systematic or continuous contacts with Texas. It is unfair to require COPA to respond to this lawsuit in Texas.

C. The Warsaw Convention
Plaintiffs argue that the Warsaw Convention expressly grants this court jurisdiction over all the defendants. Article 28(1) of the Warsaw Convention provides that:
An action for damages must be brought, at the option of the plaintiff, in the territory of one of the High Contracting Parties, either before the court of the domicile of the carrier or of his principal place of business, or where he has a place of business through which the contract has been made, or before the court at the place of his destination.
Convention of the Unification of Certain Rules Relating to International Transportation by Air, October 12, 1929, 49 Stat. 3000, 3014, reprinted, 49 U.S.C.App. § 1502 note. Plaintiffs argue that this provision creates jurisdiction in Texas.
Article 28(1) does not provide this court with personal jurisdiction over COPA. Article 28(1) merely discusses which nations have jurisdiction to hear a particular suit. Mertens v. Flying Tiger Line, Inc., 341 F.2d 851, 855 (2nd Cir.), cert. denied, 382 U.S. 816, 86 S.Ct. 38, 15 L.Ed.2d 64 (1965); In re Air Crash Disaster at Gander, Newfoundland on Dec. 12, 1985, 660 F.Supp. 1202, 1217 (W.D.Ky.1987); Hill v. United Airlines, 550 F.Supp. 1048, 1053-54 (D.Kan.1982). Under Article 28(1), a court must determine first that a particular suit has been brought in the proper country. Id. Once such a determination is made, a court still must ascertain whether it has jurisdiction over the matter under local law. Id. The fact that Article 28(1) allows this suit to go forward in the *835 United States says nothing about whether personal jurisdiction over COPA in Texas is appropriate.

4. Conclusion
This court has subject matter jurisdiction over this matter; plaintiffs' motion to remand is DENIED. This court does not have personal jurisdiction over COPA; COPA's motion for dismissal under Fed.R.Civ.P. 12(b)(2) is GRANTED. Plaintiffs' motion for leave to amend is GRANTED, and Boeing's motion for leave to file an untimely answer is GRANTED.
NOTES
[1] Bracewell v. Nicholson Air Services, Inc., 680 F.2d 103, 105 (11th Cir.1982), does not support plaintiffs' argument that Excelsior Travel acted through Continental as COPA's agent. In Bracewell, the Eleventh Circuit merely noted that discovery "may show ... that this transaction was individual and isolated and that ... it would be unfair to subject [defendant] to jurisdiction in Georgia." Id. at 105.