Eddie WILKERSON, Plaintiff-Appellant,

v.

FORTUNA CORPORATION, Defendant-Appellee.

No. 75–3306.

United States Court of Appeals, Fifth Circuit.

June 24, 1977.

Rehearing Denied July 26, 1977.

Victor K. Sizemore, Ralph E. Harris, El Paso, Tex., for plaintiff-appellant.

James F. Hulse, El Paso, Tex., for defendant-appellee.

Before WISDOM, CLARK and RONEY, Circuit Judges.

CLARK, Circuit Judge:

Just because the eyes of Texas can see it, doesn't mean that the State's "long arm" process statute can reach it. However, location plays an important part in supporting personal jurisdiction in this tort action by an El Paso, Texas horse trainer against the operator of the adjacent Sunland Park race track in New Mexico. The district court erred in dismissing the action for lack of jurisdiction. We reverse and remand.

Eddie Wilkerson had been training horses in Texas for nine years when he filed the

present action. Prior to 1972 he had applied for and received stalls at the Sunland Park race track for horses he trained. Sunland Park is operated by the defendant, Fortuna Corporation. Wilkerson alleged that in 1972 he applied for 33 stalls at Sunland Park but was granted only ten stalls. In 1973 he avers he applied for 32 stalls and was given none. Wilkerson pled that Fortuna Corporation's refusal to deal was an arbitrary, capricious breach of its duty to him in violation of a rule of the New Mexico Racing Commission. Wilkerson further asserted that as a result of Fortuna's actions, he lost his training business.

Fortuna moved to dismiss on the ground that it was not amenable to substituted service of process under the Texas long arm statute. To support its motion it recited the usual defendant's litany for actions of this type. It has no offices, no business facilities, no bank account, and no agent in Texas and is neither licensed nor qualified to do business there. It is incorporated under the laws of New Mexico. Its sole business is the operation of Sunland Park race track, which is located in New Mexico and regulated by the New Mexico Racing Commission.

Fed.R.Civ.P. 4(e), which governs service of summons in this federal forum, provides:

. . . Whenever a statute or rule of court of the state in which the district court is held provides for service of a summons . . . upon a party not an inhabitant of or found within the state, . . . service may . . . be made under the circumstances and in the manner prescribed in the statute or rule.

The pertinent Texas long arm statute[1] deems any non-resident corporation which engages in business in the state to have appointed its Secretary of State as agent for process. It specially defines doing business in this language:

For the purpose of this Act, and without including other acts that may constitute doing business, any foreign corporation, joint stock company, association, partnership, or non-resident natural person shall be deemed doing business in this State by entering into contract by mail or otherwise with a resident of Texas to be performed in whole or in part by either party in this State, or the committing of any tort in whole or in part in this State.

Tex.Rev.Civ.Stat. art. 2031b, § 4 (1964).

The district court's opinion stated:

None of these activities [which were shown by the proof], in the court's view, rise to the level of an 'act' or 'transaction' by the foreign corporation, Fortuna Corporation, that gives rise to a cause of action for damages and none of these activities are sufficient to fulfill the requirement of 'minimum contact' with the State of Texas to warrant jurisdiction under the Texas long arm statute.

Its reasoning was based on a line of Texas cases interpreting its long arm statute.[2] This three-part analysis was used: (1) The non-resident corporation must purposefully do some act or consummate some transaction in the forum state; (2) The cause of action must arise from or be connected with such act or transaction; and (3) the assumption of jurisdiction must not offend traditional notions of fair play and substantial justice considering activity in the state, relative convenience of the parties, benefits and protection of state law afforded the respective parties and basic equities.

Although Fortuna acknowledges that it engaged in much purposeful Texas activity, it asserts it was not doing business in Texas and that the district court correctly dismissed Wilkerson's asserted cause of action because it did not arise from any of those activities as required by Texas decisional law interpreting its long arm statute. This assertion is correct in its premise that

1. Tex.Rev.Civ.Stat. art. 2031b (1964).

2. *O'Brien v. Lanpar Co.*, 399 S.W.2d 340 (Tex. Sup.Ct.1966); *Hoppenfeld v. Crook*, 498 S.W.2d 52 (Tex.Civ.App.—Austin 1973, writ ref'd n. r. e.); *Sun-X Int'l Co., Inc. v. Witt*, 413 S.W.2d 761 (Tex.Civ.App.—Texarkana 1967, writ ref'd n. r. e.). *See also, Pizza Inn, Inc. v. Lumar*, 513 S.W.2d 251 (Tex.Civ.App.—Eastland 1974, writ ref'd n. r. e.).

the district court was controlled by forum state law as to the meaning and requirements of its statute. *Jetco Electronic Industries, Inc. v. Gardiner*, 473 F.2d 1228, 1232 (5th Cir. 1973). Fortuna's alternative position is that even if it were amenable to process in this action under Texas standards, the federal due process concept of minimum contacts has not been met because (1) its activities did not meet the standard of "minimum contacts," and (2) the asserted cause of action did not arise from those contacts.

## I.  *Jurisdiction Under Texas Law*

■ Our initial inquiry is as to whether Fortuna's activities constituted the doing of business in Texas within the meaning of its process statute. We find that the substantiality and continuity of its activities in Texas are of such nature and extent as would clearly meet the general Texas concepts of doing business.

It cannot be attributed to accident that Sunland Park race track is nearer to El Paso, Texas than to any urban center in New Mexico. It is so close, in fact, that in the course of the hearing the district judge stated, "I can see Sunland race track from the apartment where I live [in El Paso]." Obviously, it was placed conveniently by this metropolitan center so to draw as its sustaining life blood citizens who are nurtured and protected by Texas. Its telephone number has a regular listing in the white pages of the El Paso telephone book and no toll charge is made for calls between these locations. Sunland Park purchases a listing in the yellow pages of the El Paso telephone directory. In the course of its operation of Sunland Park, Fortuna regularly solicits customers from El Paso to attend and gamble on its races. It performs this solicitation by advertising in two El Paso newspapers, on El Paso billboards, on El Paso radio and television stations, by distributing place mats to El Paso restaurants and bars, and by distributing discount admission cards to El Paso hotels, motels and other public gathering places. The expenditures made for such promotional solicitations were classified as substantial by

Fortuna's president, who maintains a place to live in El Paso. The track's racing secretary, who also maintains his abode in El Paso, regularly mailed stall applications to Texas residents and mailed such an application to Wilkerson for the years involved. By mail, telephone, or personal contact, the racing secretary solicited entries for races to be held at Sunland Park from Texas residents and mailed futurity and derby nominations for Sunland Park special races to Texas residents. On almost any racing day, more horses entered in races at Sunland Park are bred or foaled in Texas than any other state, including New Mexico.

The ultimate business of a race track is to exhibit races to patrons who will pay to attend and gamble on their outcome. Texas does not allow parimutuel horseracing, so Sunland Park race track was set up as close to its Texas patrons as the racing and gambling laws of New Mexico would allow— just across the state line. It saturated El Paso with its substantial advertising activity to attract Texans a short step across that line. It also drew a large share of its racing horses from Texas. In summary, Sunland was designed and operated as a two-state venture. New Mexico gave the location and concomitant authorization of gambling and horse racing, an imprimatur unavailable in Texas. Texas and its citizens provided the necessary patronage and revenues and many of Sunland's race horses. Sunland is like an attractive cluster of mistletoe in a tree rooted in Texas soil. Though not attached to Texas, the mistletoe takes its nourishment from her earth. Without resort to the tort-in-Texas definition of doing business expressly provided in Article 2031b, § 4, the proof showed that Fortuna was as much doing business in Texas as it was in New Mexico. *Product Promotions, Inc. v. Cousteau*, 495 F.2d 483 (5th Cir. 1974); *Hull v. Gamblin*, 241 A.2d 739 (D.C.App.1968) (applying Texas long arm statute); 4 C. Wright & A. Miller, Federal Practice & Procedure, § 1069 at 253–55.

■ Sunland simply could not exist without an ordered society in El Paso. Even

Fortuna's advertising efforts would be ineffectual without the regular function of municipal government there. These substantial Texas activities suffice to form a solid basis of purposeful action and thereby satisfy the first of the Texas law three-part analysis. The second is met as well. It requires that the cause of action arise from, or be connected with, the defendant's Texas activities. In Fortuna's instance, Texas courts would not have to utilize the long arm statute's thin fiction of a single tort or single contract as the basis of appointment of the Secretary of State for substituted service of process. Fortuna's broad-based doing of its race track business in Texas through location, solicitation of customers, and dealing with Texas-raised and -trained horses and trainers gave rise to the cause of action asserted here. Because it projected itself into Texas daily and because its very reason for being was to deal constantly and mostly with customers from the forum state, it is not appropriate to require that Wilkerson demonstrate some specific local act which created the cause of action. There is no precise Texas precedent, but we now decide that if Texas has to decide this case, it would hold it to be sufficient that the claim in the complaint arose from Fortuna's general endeavors in Texas.

■ An additional state law point remains to be considered. Texas requires that the assumption of jurisdiction must not offend traditional notions of fair play. This analysis considers activity in the state, relative convenience of the parties, benefits and protection of state law extended to the non-resident, and basic equities. These factors have been discussed in some detail above, and that discussion is apropos here. Fortuna placed its facing enterprise as close to El Paso as it conveniently could so it could earn money from patrons who lived, worked, and visited there. It availed itself of Texas businesses, newspapers, radio and television stations, and other media to attract Texans to its race track. As we have also observed, the tort allegedly committed caused damage in Texas to one of her residents. El Paso is the site of the United States District Court closest to Fortuna's

place of business. Her president and the official who allegedly committed the tort both live in El Paso. No traditional notion of fair play is offended by requiring Fortuna to defend this suit in Texas. Because Fortuna has availed itself of the benefits and protection of Texas law extended to itself, its patrons and performers, the basic equities favor the maintenance of jurisdiction in the El Paso District Court.

## II. Federal Due Process

■ Finally, we must give attention to Fortuna's secondary position that the maintenance of jurisdiction here will offend federal due process. Fortuna's contention has two parts. The first is that the contacts were insufficient to meet minimum standards. This has been completely discussed above as to a general doing of business. Our court has also approved the special statutory definition covering a single tort. *Jetco Electronic Industries, Inc. v. Gardiner, supra; see also Product Promotions, Inc. v. Cousteau, supra*. The second is whether the cause of action asserted must arise from Fortuna's contacts with Texas. The factual answer to this second point has also been set out above in the course of discussing both the broad and the narrow state law standards for doing business. The Supreme Court has recently supplied a legal answer as well. In *National Geographic Society v. California Board of Equalization,* —— U.S. ——, 97 S.Ct. 1386, 51 L.Ed.2d 631 (1977), the Court held a District of Columbia nonprofit corporation liable for collection of California use tax on mail-order sales made from the District of Columbia. The ruling was bottomed on the concept of doing business in California. The business done by the Society consisted of the maintenance of two offices which did nothing but solicit advertising for the Society's magazine. They played no part whatsoever in mail-order sales. The Court expressly rejected the claim that federal constitutional due process required a connection between the California activity and the matter regulatable by California statute. The Court stated:

[T]he relevant constitutional test to establish the requisite nexus for requiring

an out-of-state seller to collect and pay the use tax is not whether the duty to collect the use tax relates to the seller's activities carried on within the State, but simply whether the facts demonstrate "some definite link, some minimum connection, between [the State and] the person . . . it seeks to tax." *Miller Bros. v. Maryland, supra,* 347 U.S. 340, at 344–345, 74 S.Ct. 535, at 539, 98 L.Ed. 744. (Emphasis added.) Here the Society's two offices, without regard to the nature of their activities, had the advantage of the same municipal services—fire and police protection, and the like—as they would have had if their activities . . . included assistance to the mail order operations that generated the use taxes.

*Id.* at ——, 97 S.Ct. at 1398. The *National Geographic* holding that federal due process is not offended when a state imposes a use tax that is unrelated to the activities of the non-resident within the state is applicable here. If a "minimum connection" is all that need be shown to exert the state's power to tax, *a fortiori,* a non-resident may be required to defend an action in state court even though the suit bears no relation to the activities deemed necessary and sufficient to constitute minimum contacts. It is more than enough to satisfy federal constitutional due process, in the case at bar, to establish that Fortuna's fortunes were continuously and intimately linked with El Paso.

*National Geographic* confirms the conclusions reached by this circuit in *Jetco Electronic Industries, Inc. v. Gardiner, supra.* The Texas long arm statute was held properly to embrace a defendant who committed a tort in the state, since "the defendant's other activities within the forum, even though wholly unrelated to the suit, satisfy the minimum contacts requirement." *Id.,* 473 F.2d at 1234. *See also* 4 C. Wright & A. Miller, *supra,* § 1069 at 261.

The judgment dismissing the action for lack of personal jurisdiction is reversed and the cause is remanded for further proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.